[Civ. No. 5311. First Appellate District, Division One.—June 2, 1926.]

## BIG ROCK MUTUAL WATER COMPANY (Corporation), Appellant, v. VALYERMO RANCH COMPANY et al., Respondents.

[1] WATERS AND WATER RIGHTS—ADVERSE USER—TEMPORARY INTERRUPTION.—Where the waters of a stream are being used openly, notoriously, and under a claim of right, an occasional suspension or interruption of such use will not break the continuity of exclusive possession, so as to defeat the acquisition of title by adverse use, but the interruption, in order to constitute a tolling of the statute, must be open and either upon a claim of right or so notorious as to constitute such a claim, and it must be of such a character as that required to initiate an adverse possession.

[2] ID.—CESSATION OF USE BY IRRIGATION DISTRICT—ADVERSE USE BY RIPARIAN OWNERS.—Where, after an irrigation district has become defunct and ceased to take the waters from a stream, certain riparian owners make a beneficial use of said waters for a period of time sufficient to acquire a title by prescription and adverse possession, and such use is made openly, notoriously, and adversely to all the world, said owners acquire a permanent right to continue to use such waters, even as against the successor in interest of the former irrigation district.

[3] ID.—JUDGMENT—SUBSEQUENT ADVERSE USER—RES ADJUDICATA.—Where an irrigation district obtains a judgment against an individual determining the rights of the parties to the waters of a given stream and thereafter, and during the period said irrigation district ceases to function as such, said judgment is not observed by said individual or by his successor in interest, but, on the contrary, use of the water to the full extent of the ditch used by them is made adversely to the judgment, and such use is not questioned by anyone for upward of twenty years or more, said judgment cannot be said to be *res adjudicata* as to said successor in interest or affect any rights he or his predecessor acquired subsequent to the rendition of said judgment.

[4] ID.—PRIOR CLAIM—TITLE BY ADVERSE USER.—A permanent right to the use of the water or a waterway may be acquired by one who has complied with the essential elements for the statutory period which constitute the adverse user of the water amounting to prescription; and this right may be acquired as against one

---

1. See 25 Cal. Jur. 1180.
4. See 25 Cal. Jur. 1192; 27 R. C. L. 1288.

who formerly claimed the water by virtue of a prior appropriation, as a riparian owner, as a purchaser, or as against one who originally claimed the right to the water by prescription itself, or as against one who had acquired the right to the water by any other method.

[5] ID.—ADVERSE USE—GRANT PRESUMED—LOSS OF WATER HELD AS PUBLIC USE.—Where one has complied with all the essentials necessary and has had the continued, open, notorious, exclusive, uninterrupted, and adverse use and enjoyment of the water under a claim of right for at least the period of time prescribed by the statute for the commencement of actions for recovery of real property, the law will presume a grant of the right so held and enjoyed; and a private corporation, or even a public utility corporation, holding water as a public use can lose its right by prescription.

[6] ID.—BENEFICIAL USE—ISSUES—EVIDENCE—FINDINGS.—An acquired right in waters is limited to the amount that is reasonably necessary for the beneficial purpose for which it is diverted, and no title can be acquired to that part of a diversion which is excessive of such needs; and in this action to determine the rights of the parties in the waters of a given stream, although there was a decided conflict in the evidence, there was ample evidence to support the findings as to the amount of water reasonably necessary for the full enjoyment of the beneficial use made by defendants under their three classes of water rights which were put in issue under the pleadings.

---

(1) 2 C. J., p. 96, n. 60; 40 Cyc., p. 697, n. 49.  (2) 40 Cyc., p. 734, n. 32.  (3) 34 C. J., p. 838, n. 3.  (4) 40 Cyc., p. 695, n. 39.  (5) 2 C. J., p. 221, n. 96; 40 Cyc., p. 696, n. 40, 43, 44, p. 697, n. 49, 51, 52, p. 699, n. 65, 68.  (6) 40 Cyc., p. 700, n. 77.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

William T. Kendrick, Victor H. Kendrick and Kibbey & Stoneman for Appellant.

Haas & Dunnigan, H. E. Forster and C. F. Holland for Respondents.

---

5.  See 25 Cal. Jur. 1149.
6.  See 25 Cal. Jur. 1160.

John C. Packard, as *Amicus Curiae* in Support of Appellant.

TYLER, P. J.—Action to quiet title to all the water of Big Rock Creek, formerly known as Rio Del Lano, a natural non-navigable stream situated in Los Angeles County.

The stream has its source in the Sierra Madre Mountains and flowing in a northerly direction to the plains below, known as Antelope Valley, it passes what is designated in the record as "Sweet Tunnel." The complaint recites that plaintiff is the owner of all the waters of said stream which naturally flow by the land of said tunnel whenever the same does not exceed 2,000 standard miner's inches. Further allegations are to the effect that the defendants and each of them claim an estate or interest and a right to use some of the waters adverse to the plaintiff; that each of them is without any right whatever, as they have no interest in the water; that notwithstanding this fact defendants have entered upon the said stream and diverted large quantities of its waters so belonging to plaintiff and appropriated it to their own use and deprived the plaintiff thereof. The prayer of the complaint is that each of them be required to set forth the nature of his claim so that all of the adverse interests of the various defendants may be determined by the action. Answers were duly filed on behalf of the defendants Valyermo Ranch Company, a corporation, Levi F. Noble, R. B. Pallett, and a separate answer was filed on behalf of J. Royal Lemon, successor in interest to one Byron H. Kent, setting forth the respective interests of these defendants.

The Valyermo Ranch Company, by its answer, in substance alleges that its lands are riparian to the waters of the stream and within the watershed thereof, and that it has an interest in and a right to use said water. It denies that plaintiff was or ever has been entitled to the exclusive or any possession or use thereof as it flows past the said tunnel. It admits that it takes and for many years last past has taken water from said stream through pipe-lines for distribution on its lands and has been using the same to irrigate alfalfa and deciduous fruit trees in an economical way,

and that the alfalfa and trees are wholly dependent upon the water so taken for their growth and cultivation; that it has, during the last five years, actually appropriated and taken through the said pipe-lines from the point of its diversion at all times during the irrigation season, openly, notoriously, and adversely to all the world and adverse to plaintiff and its stockholders and their predecessors in interest, a minimum of 180 inches of water and as much more up to the capacity of said pipe-lines as has been necessary to be applied to its irrigable lands and for the watering of its livestock and for its domestic uses; that the lands owned by it are of a porous character and require for their proper irrigation and for the proper advantages and cultivation of the trees and crops all of the said 180 standard miner's inches of water during the irrigation season, and all of the same have been used for beneficial purposes; that said rights are claimed by the company as the owner of lands riparian to said stream and by virtue of actual appropriation; that said company, as riparian proprietor of land adjacent to said stream, is entitled to take said minimum of 180 inches and upwards to the capacity of said pipe-lines at its point of diversion from the waters of said stream, the same to be applied to the uses and purposes set forth. It is then alleged that it is the owner of a minimum of 180 inches of water during the irrigating season and up to a maximum of 225 standard miner's inches or the capacity of its pipe-lines. Substantially the same allegations are pleaded on behalf of defendant Robert B. Pallett. On his behalf it is alleged that for more than five years last past he has been the owner and in the possession of certain described lands adjacent and riparian to the stream and within its watershed, all of which lands are up stream and above the lands belonging to plaintiff or its stockholders; that he is now and has been diverting for the period stated, during the summer or irrigating season, a minimum of 150 standard miner's inches of water through an open ditch for the purpose of cultivating fruit trees, cereals, alfalfa, and like crops grown upon his lands, and that his use has been made openly, notoriously, and adversely to all the world under a claim of right, and he prays that said 150 standard miner's inches be awarded him. These defendants then

allege that should they be deprived of the waters so held by them or any part thereof, they will suffer irreparable damage and injury not capable of being measured in terms of money. As a further and separate defense they allege that plaintiff and its stockholders and predecessors in interest have been guilty of laches in not asserting any claim adversely to defendants during many years, and particularly during the five years last past. Estoppel is also pleaded. The answer filed by Byron H. Kent and J. Royal Lemon alleges that Kent has disposed of all of his interest in any lands and all water rights appurtenant thereto, and which are affected by the action, to J. Royal Lemon. This defendant also denies any rights in plaintiff to the waters, and he alleges that for more than seven years prior to November, 1918, he has been the owner of certain described lands riparian to and within the watershed of said stream situated above plaintiff's land, and that all of said land is desert in character and worthless without irrigation; that for seven years prior to the commencement of this action he has been diverting waters from the stream at a certain point through a ditch having a capacity of 100 standard miner's inches, for the purpose of irrigating his orchard and alfalfa fields; that he has diverted the water openly, notoriously, and adversely to plaintiff. Laches and estoppel are also pleaded by him as a separate defense. General relief is prayed for by all of these defendants.

Defendant Noble simply claims an interest as a stockholder in Valyermo Ranch Company and his interest in the waters has been acquired by that company.

The issues thus presented were tried without a jury and judgment was rendered in favor of the defendants who appeared and answered. Under the judgment each was awarded a specific amount of water. The quantity allowed the Valyermo Ranch Company was 225 standard miner's inches, the defendant R. B. Pallett 170 inches, and J. Royal Lemon 100 miner's inches, and, in addition thereto, each of these defendants was found to be entitled to an additional indefinite amount of water for certain riparian lands described in the complaint, and the remainder of the flow was found to belong to plaintiff. A new trial was asked for and pending the hearing of the motion the judge who tried

the case resigned from office, and his successor heard the application. The motion was denied upon the ground that the time for passing upon the same was insufficient to permit of a proper examination of the voluminous record. The findings and judgment were, however, on motion of defendants, set aside and other findings were made, and another judgment based thereon was entered, and it is from this latter judgment that this appeal is taken.

It is the claim of appellant that the evidence is insufficient in law or in fact to show that plaintiff's title to the waters has in whole or in part been divested from it or its predecessor in interest either by appropriation or by prescription or by reason of the riparian rights of the defendants, except a portion thereof which had been decreed in a former action to belong to one Shoemaker, a predecessor in interest of lands now belonging to defendant Pallett.

So much of the same as is necessary for a discussion of the case shows in substance that in the year 1888 one Carter appropriated certain of the waters of Big Rock Creek. Within sixty days after his notice was posted he commenced the construction of a ditch, and diverted water from the stream. The first amount of water taken was 1,250 miner's inches, which was later increased to 4,000. The water so taken was put to a beneficial use. The point of diversion was a short distance north of the tunnel above referred to, but in the year 1890 this point of diversion was changed and a new one made a little farther south. On August 22, 1890, Carter conveyed all his rights thus acquired in the waters to the Big Rock Irrigation District, which district thereafter took water from the stream and used the same for irrigating the lands within the district. The years from 1895 to 1903 were dry ones and practically all of the owners of land within the district left the locality because of the drought. The irrigation officers of the district were among the number, their last meeting being held on June 5, 1900, and the district as such did not again function through its board of directors until some fourteen years thereafter, when in the year 1914 a new board was appointed by the supervisors of Los Angeles County. The new directors took charge of the defunct district and during the years 1916–17 employed two zanjeros who attempted on a few occasions

to divide the waters when available among such owners as had remained in the locality. The district continued to be thus pretentiously operated until it was finally abandoned on February 17, 1919, upon petition of a majority of owners of land within the same. At this time, whatever rights as still remained in the district became vested in plaintiff by virtue of a decree of the superior court of Los Angeles County and a commissioner's deed executed by order of said court pursuant to the decree. [1] There is evidence to show that during the years of nonusage by plaintiff's predecessor in interest and prior thereto, the waters of the stream were continuously used by the various defendants openly, notoriously, and under a claim of right and that they made costly improvements to properly divert the water, running into many thousands of dollars. The use of the waters so made by defendants was without interruption by anyone, except that the zanjeros employed by the new board of directors at the time the district attempted to again function on a few occasions interfered with the full flow of the waters by breaking and placing obstructions in the ditch, but they never notified anyone that such interference was made under a claim of right. The obstructions were, in each instance, immediately removed by defendants who continued in their use of the waters. Acts of this character do not constitute an interruption of an adverse use of water. An occasional suspension or interruption of such use will not break the continuity of exclusive possession. Interruption, in order to constitute a tolling of the statute, must be open and either upon a claim of right or so notorious as to constitute such a claim. It must be of such a character as that required to initiate an adverse possession. A clandestine entry will not set the statute in motion because the owner cannot, under such circumstances, be said to have acquiesced in the wrongful entry. (*Armstrong* v. *Payne,* 188 Cal. 592 [206 Pac. 638]; 2 Farnham on Waters, sec. 2; Cor. Jur., p. 96.)

[2] The evidence upon the question of adverse use of the waters by the various defendants is voluminous. It shows that while their respective rights were acquired at different times, they all made a beneficial use of the amount of waters claimed by them adversely, and for a period of

time sufficient to acquire a title by prescription and adverse possession. There is also evidence to show that the predecessors in interest of the Valyermo Ranch Company made a beneficial use of the waters about as early as plaintiff's predecessor, and that all of the defendants made such use openly, notoriously, and adversely to all the world after the irrigation district had ceased to function, in the manner and for the period stated. **[3]** With reference to defendant Pallett, it appears that about two years after the irrigation district originally began to operate it brought an action against one Shoemaker, Pallett's predecessor in interest, to determine the respective rights of the parties in the water of the stream and that judgment was had determining these rights. It also appears, however, that after the year 1895, and during the period when the district had ceased to function as such, the judgment was no longer observed either by Shoemaker or Pallett, but, on the contrary, use of the water to the full extent of the ditch used by them was made adversely to the judgment, and such use was never questioned by anyone until the commencement of this action. The judgment between the district and Shoemaker, therefore, cannot be held to be *res adjudicata* as to Pallett or affect any rights he or Shoemaker acquired subsequent to its rendition. There is, therefore, no merit in the contention that the evidence is insufficient to show that the various defendants have made use of the waters adverse to plaintiff's claim herein.

**[4]** In general it may be said that a permanent right to the use of the water or a water right may be acquired in the western states by one who has complied with the essential elements for the statutory period which constitute the adverse user of the water amounting to prescription. This right may be acquired as against one who formerly claimed the water by virtue of a prior appropriation, as a riparian owner, as a purchaser, or as against one who originally claimed the right to the water by prescription itself, or as against one who had acquired the right to the water by any other method. It follows that the rights of an appropriator may be lost in whole or in part by the adverse possession and the user of the water by another amounting to prescription. **[5]** Where one has complied with all the essentials

necessary and has had the continued, open, notorious, exclusive, uninterrupted, and adverse use and enjoyment of the water under a claim of right for at least the period of time prescribed by the statute of the state where the right is claimed for the commencement of actions for recovery of real property, the law will presume a grant of the right so held and enjoyed. A private corporation holding water as a public use can thus lose its right by prescription, and the rule applies to public utility corporations holding title to property as a public use. A distinction is sought to be drawn by appellant between the ordinary public utility corporation and an irrigation district, it being claimed that as to the latter the property of the district is held by it in trust for the public and subject to the control of the state, and this being so, it cannot be deprived of its right either by adverse possession, laches, estoppel, or abandonment. In support of this claimed distinction we are cited to numerous authorities to the effect that there can be no adverse holding of lands set apart or reserved to public use which will deprive the public of the right thereto or give title to the adverse claimant or create a title by virtue of the statute of limitations. These cases are extensively cited and reviewed in *People* v. *Kerber,* 152 Cal. 731 [125 Am. St. Rep. 93, 93 Pac. 878]. There can be no question that where public lands have been devoted to a public use, persons cannot obtain title thereto by prescription founded on an adverse occupancy. This principle is indisputable and is not here disputed. It has no application, however, to the instant case. The title or interest that one may acquire in the waters of a stream is entirely different to that which may be acquired in lands. Running water, so long as it continues to flow in its natural course, is not and cannot be the subject of a private ownership. A right may be acquired to its use, but this right carries with it no specific property in the *corpus* of the water itself. One availing himself of the use of such waters has simply the right of usufruct as it passes down the bed of the stream subject to a reasonable use and consumption for domestic and other purposes. This interest is dependent upon user and it may be lost when the owner ceases to make avail of the same. (Civ. Code, sec. 1411; *Santa Paula Water Works* v. *Peralto,* 113 Cal. 38

[45 Pac. 168].) This rule has been applied against a public service corporation and there is no reason in principle why it should not equally apply against an irrigation district. Both are created to serve the public. Whatever differences may exist between them with reference to the method of their organization or their rights, duties, and liabilities, their purposes are the same. In·the case of a public use the beneficiaries do not possess rights to the water which are in the ordinary sense private property. (*Leavitt* v. *Lassen Irr. Co.,* 157 Cal. 82 [29 L. R. A. (N. S.) 213, 106 Pac. 404]; *Hildreth* v. *Montecito Creek W. Co.,* 139 Cal. 22 [72 Pac. 395].) Those holding· possession thereof in trust for the beneficiaries cannot continue to hold it as a public use where they have discontinued to perform their public duty which such possession and control imposed. (*Fellows* v. *City of Los Angeles,* 151 Cal. 52 [90 Pac. 137].)

Our supreme court, in dealing with this subject, has said that there is no rule of law which prevents a person who owns land riparian to a stream above a place of diversion of water therefrom by some other person, even a public service corporation for public use, from taking water from the stream and acquiring title thereto by prescription as against such public use. That a public service corporation is no more exempt from this deprivation than any other owner of a water right, and any person, although not a riparian owner, may acquire a prescriptive right as against a public use below by taking water out of the stream which otherwise would run down to the channels of the public service corporation. (*San Joaquin etc. Canal & Irr. Co.* v. *Worswick,* 187 Cal. 674 [203 Pac. 999].)

As is pointed out in *Escondido Mutual Water Co.* v. *Escondido,* 169 Cal. 772 [147 Pac. 1172], it is to be borne in mind that it is only the use of water which is a public use, and while it is true that whenever any water has been so devoted to a public use the public and each individual thereof as a part of the public has a right to the continued use of that water, still the use impressed may be lost by abandonment. It would be a most mischievous perpetuity which would allow one who has made an appropriation of a stream to retain indefinitely as against other appropriators of the right to water therein while failing to apply the same

to some useful or beneficial purpose (*Smith* v. *Hawkins,* 110 Cal. 127 [42 Pac. 453]). Considering the imperative demand of the use of, water, the purveyors of the use, whatever the character of their holding may be, must make avail of the waters or the interest will be lost. The rule applies to all persons alike. It is the use of the water merely to which they may acquire an interest and not to the water itself.

[6] The further claim is made that, assuming the defendants had acquired some water by prescription, they could only acquire the right to so much of the water as was "reasonably necessary" for the lands actually irrigated and that the evidence shows the amount of waters awarded to them was unnecessary to properly irrigate their lands. There is no question that an acquired right in waters is limited to the amount that is reasonably necessary for the beneficial purpose for which it is diverted, and no title can be acquired to that part of a diversion which is excessive of such needs. In so far as the diversion exceeds such reasonable necessary amount it is contrary to the policy of the law, and is a taking without right and can confer no title no matter for how long continued, it being the policy of this state to require the highest and greatest possible benefit from the waters in the interest of agriculture and other useful and beneficial purposes. (*California Pastoral etc. Co.* v. *Madera Irr. Co.,* 167 Cal. 78 [138 Pac. 718].)

Upon the subject of what amount was reasonably necessary for the use of the various defendants, there is a decided conflict in the evidence. It appears, however, that the lands in question are porous and gravelly and absorb water very rapidly, in consequence of which it is necessary to distribute large quantities over the surface of the ground so that the roots of the plants can be properly nourished. It also appears that by reason of the porous character of the soil a large percentage of the water makes its way by subsurface flow back to the creek to the benefit of the lower owners.

There is ample evidence in the record to support the findings as to the amount of water reasonably necessary for the full enjoyment of the beneficial use made by defendants under their three classes of water rights which were put in issue under the pleadings.

Considering our conclusion upon this subject, the question of estoppel and laches raised by respondent becomes unimportant.

The judgment is affirmed.

Knight, J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 2, 1926, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 30, 1926.

Shenk, J., dissented.