[Civ. No. 47825. First. Dist., Div. Four. Apr. 5, 1983.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al.,
Plaintiffs and Appellants, v.
OAKLAND UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Mary H. Mocine, Madalyn J. Frazzini, Michael Heumann, M. Susan Carter and Steven T. Nutter for Plaintiffs and Appellants.

Michael S. Sorgen, Sandra Woliver, Yvonne Garcia and Brian M. Libow for Defendants and Respondents.

## OPINION

**RATTIGAN, J.**—Appellant California School Employees Association (CSEA) is a statewide organization of classified employees of public school districts. The members of its Oakland chapter No. 1 (chapter) include classified employees of respondent Oakland Unified School District (District) who work as security officers. Acting on their behalf, and joined by one of them, CSEA and the chapter petitioned the superior court for a writ of mandate and related relief based on the District's alleged failure to comply with provisions of the Education Code which require certain classified employees of public school districts to be paid "compensation" in lieu of "holidays" which they "lose" when the holidays fall outside their workweek. The issue joined on the pleadings in the action reflected opposing interpretations of the statutory provisions as they apply to undisputed facts. The superior court adopted the District's interpretation and entered a judgment denying relief. The petitioners appeal from the judgment.

### The Pleadings

Appellants commenced the action by filing a ". . . Petition For Writ of Mandate (CCP § 1085)" in which they were named as CSEA, the chapter, and Ralph T. Seal. The respondents named in the petition were the District, its governing board, and the individual members of the board "in their representative capacities as members . . . ." Appellants alleged in a single cause of action as follows:

CSEA is a nonprofit corporation which represents more than 130,000 "California classified school employees." CSEA and the chapter were "currently the exclusive representative of a bargaining unit of security officers" who were employed by the District and were "affected by the actions complained of herein. . . ." CSEA and the chapter brought the action "as the exclusive representative of said affected employees . . . ."

Appellant Ralph T. Seal is a security officer employed by the District. He is also "representative" of 16 named individuals who "are or have been security officers . . . and are personally and adversely affected by the illegal actions herein complained of." The District required the named security officers (described as "petitioner employees") to work "four-consecutive-day workweeks in accordance with Education Code Section 45132."[1] They had

---

[1]Statutory citations after this point are to the Education Code unless expressly indicated otherwise. Section 45132 provides in pertinent part: ". . . [A] governing board of a [public school] district may establish a 10-hour-per-day, 40-hour, four-consecutive-day workweek for all, or certain classes of its employees, or for employees within a class when, by reason of the work location and duties actually performed by such employees, their services are not required for a workweek of five consecutive days. . . ."

been required to work 9.375 hours per day, four days per week, from 1971 until November 30, 1978, and ten hours per day, four days per week, since December 1, 1978, "without regard to the occurrence of holidays or substitute holidays." Throughout these periods, the District had "violated the . . . Education Code by incorrectly computing and underpaying [the] petitioner employees for work performed during weeks which include one or more work holidays."

The allegations of the petition which developed the alleged "violations" are not readily intelligible because they are made in a chronological context of "grievance" and related proceedings in which the "petitioner employees" had allegedly pursued their administrative remedies between 1971 and 1978. We therefore describe the issue of statutory interpretation as the parties argued it to the trial court from undisputed facts, as follows:

Section 45203 provides that classified employees of a school district are entitled to designated "paid holidays," and that an employee who is required to work on any such holiday shall be paid two and one-half times his or her regular daily pay (i.e., straight time plus so-called "holiday premium pay" of time and one-half) for that day.[2] Section 45206 provides in effect that a classified employee who works an irregular workweek established according to law, and who consequently "loses a holiday to which he or she would otherwise be entitled" (i.e., where a holiday falls outside the actual workweek), shall receive either (1) "a substitute holiday" or (2) "compensation in the amount to which the employee would have been entitled" if the holiday had fallen within the workweek.[3]

---

[2]At all times relevant to this action, section 45203 provided in pertinent part: "All . . . employees a part of the classified service [of a school district] shall be entitled to the following paid holidays . . . : January 1, February 12 known as 'Lincoln Day,' the third Monday in February known as 'Washington Day,' the last Monday in May known as 'Memorial Day,' July 4, the first Monday in September known as 'Labor Day,' November 11 known as 'Veterans Day,' that Thursday in November proclaimed by the President as 'Thanksgiving Day,' December 25, . . . [and certain holidays specially proclaimed as such] . . . .

. . . .

"When a holiday herein listed falls on a Sunday, the following Monday shall be deemed to be the holiday in lieu of the day observed. When a holiday herein listed falls on a Saturday, the preceding Friday shall be deemed to be the holiday in lieu of the day observed. When a classified employee is required to work on any of said holidays, he shall be paid compensation, or given compensating time off, for such work, in addition to the regular pay received for the holiday, at the rate of time and one-half this regular rate of pay. . . ."

[3]Section 45206 reads: "Any school district which requires any classified employee to work a workweek other than Monday through Friday, or if such classified employee consents to a workweek including Saturday or Sunday or both, pursuant to Section 44048, and as a result thereof the employee loses a holiday to which he or she would otherwise be entitled shall provide a substitute holiday for such employee, or provide compensation in the amount to which the employee would have been entitled had the holiday fallen within his or her normal work schedule."

The parties agree that each of the "petitioner employees" is reached by section 45206 because of the four-day workweek the District exacts pursuant to section 45132 (see the text at fn. 1, *ante*), and that each is accordingly entitled to a "substitute holiday" or to the alternative "compensation" when a holiday falls outside that workweek. The District has in fact elected not to give any such employee a "substitute holiday," but to pay him or her the alternative "compensation" in money. Pursuant to the District's interpretation of section 45206, it fixes the amount of the alternative "compensation" at one day's regular pay (i.e., straight time) and pays that amount to the affected employee. Appellants contend that section 45206 requires the payment of alternative "compensation" in one and one-half times that amount (i.e., holiday premium pay of time and one-half).

After reciting the substance of the foregoing, appellants alleged that they had exhausted their administrative remedies; that the "[p]etitioner employees have been denied compensation to which they are entitled by statute in amounts to be proven at . . . trial"; and that appellants had "no adequate plain or speedy remedy at law other than . . . mandate." In the prayer of the petition, they requested a peremptory writ of mandate commanding respondents "to take all action necessary to comply with . . . Section 45206 . . ."; that the "petitioner employees be awarded damages in the amount of statutory backpay entitlements since April of 1971 as proved at the time of trial," plus interest; and for their costs of suit and general relief.

The petition was accompanied by a noticed "Motion For Peremptory Writ Of Mandate" in which appellants in effect requested the trial court to issue a peremptory writ in the first instance. Respondents filed a return in which they admitted the material operative facts alleged in the petition but denied the violations of law charged to them.

The cause was orally argued at a hearing conducted on appellants' motion for the issuance of a peremptory writ of mandate. No evidence was received, and the matter was submitted on the undisputed facts alleged in the petition. Upon the submission, the trial court ordered from the bench that the petition was denied and that respondents were to recover their costs of suit.[4] The court subsequently entered a formal judgment in which it ordered the petition "denied and dismissed" and awarded respondents their costs. This appeal followed.

---

[4]The parties had previously informed the court by letter that they had agreed to "bifurcate the trial and reserve the issue of damages for a later date." This agreement was reiterated at the oral argument. The prospective issue of "damages" pertained to the "statutory payback entitlements" which were claimed in the petition. Respondents raised a statute of limitations in a memorandum accompanying their return, but they did not plead it as a defense in the return itself. The issue of "damages" disappeared when the petition was peremptorily denied.

*Review*

■ In a case which involved the language of present section 45203 (see fn. 2, *ante*) when it appeared in a predecessor statute (former § 13656), a Court of Appeal held that a classified employee who was required to work on one of the specified holidays was entitled to compensation in time off or in money, and that the employing school district was entitled to choose between the two alternatives. (*California School Employees Assn.* v. *New Haven Unified School Dist.* (1979) 91 Cal.App.3d 919, 921-922, 924 [154 Cal.Rptr. 479].) The court also held that the rate of compensation in either event was "time and one-half" (i.e., one and one-half days off with pay or the payment of a day's wage plus one-half) because this was provided by the "clear language of the statute." (*Id.*, at p. 922.)

The parties here agree that section 45206 similarly entitles a classified employee to be compensated in time or money when he or she "loses" one of the same holidays due to his or her irregular workweek established pursuant to section 45132; that section 45206 similarly permits the employing district to make the choice; and that respondent District has consequently made a valid election to compensate its security officers for "lost" holidays by paying them in money rather than granting them the "substitute holiday" mentioned in the statute. (See fn. 3, *ante*.) The parties otherwise debate the same issue of statutory interpretation which was joined below on the undisputed facts: i.e., the amount of money payable.

Appellants stand on the language of section 45206 in arguing that the required payment is time and one-half (i.e., one and one-half times a day's pay). Respondents continue to assert that the amount payable is one day's straight pay, arguing that section 45203 requires the payment of time and one-half to a classified employee who is required to *work* on a statutory holiday; that the security officers involved here are *not* required to work on a holiday which they "lose" when—and because—it falls outside their four-day workweek; and that the compensation to which they are entitled pursuant to section 45206 is accordingly one day's pay (straight time) and no more. Respondents rationalize this interpretation as follows: "Logically, the employee faced with the burden of working on a day when everyone else has a holiday receives time and one-half in addition to the regular rate of pay for the holiday. The employee who enjoys the holiday and who is not required to work it receives either a substitute holiday or the straight daily rate of pay. The legislative intent is that those who work the holiday make a greater sacrifice and should be compensated accordingly."

■ The rationalization is not implausible in theory, but the legislative intent underlying a statute is to be ascertained by reading it in such manner as will

give effect to the ordinary import of its language (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]) and harmonize it with other parts of the statutory scheme in which it appears. (*Id.*, at pp. 230-231; *People* v. *Shirokow* (1980) 26 Cal.3d 301, 307 [162 Cal.Rptr. 300, 605 P.2d 859].) Section 45206 is to be read with section 45203 because they are parts of a single statutory scheme which pertains to the subject of "compensation" payable to classified school employees in connection with the "paid holidays" designated in section 45203. ■ We interpret the language of both statutes, and harmonize them, by applying them to a hypothetical security officer who works a four-day workweek for the District in the undisputed factual pattern of this case.

If the security officer's four-day workweek runs from Tuesday through Friday of the calendar week, and a statutory holiday falls on a Wednesday, he will work on the holiday. As in the case of any day he works, he will be entitled to receive a day's pay for that day at the regular rate. Because it is a holiday, section 45203 will entitle him to receive *additional* "compensation" for it "at the rate of time and one-half" his regular rate. (See fn. 2, *ante*.)

If a statutory holiday falls on a Monday, the security officer "loses" it, within the meaning of section 45206, because it falls outside his regular workweek: i.e., outside his "normal work schedule." (See fn. 3, *ante*.) He does not "lose" the regular day's pay he would have received for working on that day, because he does *not* work on it. What he actually "loses" is the additional "compensation" of time and one-half (holiday premium pay) to which he would have been entitled if the holiday had fallen within his workweek. Where this occurs, the District does not give him a "substitute holiday" as section 45206 permits. Section 45206 alternatively requires that he be paid "compensation in the amount to which . . . [he] . . . would have been entitled had the holiday fallen within his . . . normal work schedule." As we have just seen, this "amount" is the time and one-half he actually "loses" because the holiday does not fall within the workweek. Section 45206 consequently requires that he be paid time and one-half (premium holiday pay) where he "loses" a holiday within its meaning.

It thus appears from the statutory language that the Legislature enacted section 45206 to protect the classified school employee on a four-day workweek against the "loss" he or she would experience where a holiday designated in section 45203 falls outside the workweek. This interpretation is supported by the apparent reasons for the special treatment of the employee mentioned. The reasons are indicated by the schedule of the regular annual holidays designated in section 45203, of which there are eight. (See fn. 2, *ante*.) Four of them fall on fixed calendar dates each year, and one falls on a Thursday, but three of them fall on designated Mondays only. (See *ibid*.)

A classified school employee who has a conventional five-day workweek (Monday through Friday) will receive the benefit of each of these holidays as it falls within the workweek. If it falls outside the workweek, on a Saturday or Sunday, this employee will similarly receive its benefit because section 45203 provides that it will be observed on the preceding Friday or on the following Monday. In either event, the five-day-workweek employee will receive the particular day off, with pay, or time plus time and one-half if he or she is required to work on the day, pursuant to the fifth sentence of section 45203.

The schedule of holidays fixed in section 45203 produces different consequences in the case of a classified school employee who is on a four-day workweek which does not include Monday (such as our hypothetical security officer who works on Tuesday through Friday). This employee will not have the benefit of any of the three Monday holidays in any year (Washington Day, Memorial Day, and Labor Day), nor of any fixed-date holiday which happens to fall on a Sunday (and is observed on the following Monday) in any particular year. The statutory calendaring of holidays thus places him or her at a distinct disadvantage because he or she will regularly "lose" holidays, each year, where fellow employees with conventional five-day workweeks will not.

The distinction fairly demonstrates that the Legislature decided to hold the disadvantaged employees harmless, from the accidental consequences of their four-day workweeks, by providing in section 45206 that an employee who "loses a holiday" by reason of a "workweek other than Monday through Friday" shall receive either a "substitute holiday" or "compensation" in money for the money "lost." (See fn. 3, *ante*.) There is no reason to believe that the alternative "compensation" in money was intended to include straight time for a day on which the employee did not work and could not have worked. It follows that the alternative "compensation" was intended to be the time and one-half holiday premium pay he or she actually "lost."

For the foregoing reasons, appellants' interpretation of the pertinent statutes is correct. They are accordingly entitled to a writ of mandate requiring the District to pay each of the affected employees at the rate of time and one-half for any statutory holiday designated in section 45203 which falls outside his or her four-day workweek. (See Code Civ. Proc., § 1085; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 61, 71, pp. 3838, 3848-3849.) The judgment denying relief in this respect must therefore be reversed. On the remand ordered below, and subject to the trial court's consideration of matters of detail, a judgment directing the issuance of a writ of mandate will be entered and the writ will issue. This disposition will revive the yet-unresolved issue of "damages" in the form of the "statutory backpay entitlements" which appellants have claimed in the action. (See fn. 4, *ante*.) The trial court will

resolve this issue, and any problems of pleading associated with it (see *ibid.*), in appropriate proceedings to be conducted on the remand.

The judgment is reversed. The cause is remanded to the trial court with directions to enter a judgment granting relief, and to conduct further proceedings, consistent with this opinion.

Caldecott, P. J., and Poché, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 1, 1983.