Filed 8/29/14

## CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of JOY and WILLIAM EVANS. | |
| JOY EVANS,<br><br>    Respondent,<br><br>        v.<br><br>WILLIAM EVANS,<br><br>    Appellant. | F068323<br><br>(Super. Ct. No. S-1501-FL-608766)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Law Offices of Edward J. Quirk, Jr. and Edward J. Quirk, Jr. for Appellant.

Law Offices of Richard O. Fanning and Richard O. Fanning for Respondent.

-ooOoo-

This appeal presents a question of first impression about the Family Code provisions that require spouses who are dissolving their marriage to exchange declarations of disclosure of assets and liabilities.[1]  Specifically, is a property settlement

---

[1]    Declarations of disclosure (disclosure declarations) are governed by Family Code sections 2100 through 2113, which sections comprise chapter 9 of part 1 of division 6 of the Family Code (Chapter 9).  All further statutory references are to the Family Code unless otherwise specified.

agreement valid and enforceable when executed by spouses (1) after they have separated but before a petition for dissolution of marriage has been filed and (2) without an exchange of disclosure declarations?

In this case, the spouses entered into a written agreement to resolve the property rights to their residence. The husband agreed to buy out the wife's interest for one-half the value of the equity. When they signed the agreement, they were separated, but a petition for dissolution of marriage had not been filed. The husband now contends the agreement is unenforceable because they did not exchange disclosure declarations before signing the agreement.

The trial court ruled the agreement was enforceable because the Family Code did not require disclosure declarations be exchanged *before* a petition was filed. The court stated the terms of the agreement would be incorporated into the judgment of dissolution of marriage that divided the community property.

We interpret section 2105, subdivision (a) and the other provisions in Chapter 9 to mean that an exchange of disclosure declarations is not required for a pre-petition agreement to be enforceable, even when spouses make the agreement in contemplation of dissolution. In addition, we do not read *In re Marriage of Burkle* (2006) 139 Cal.App.4th 712 (*Burkle*) as supporting an interpretation that extends the statutory disclosure requirements to pre-petition agreements.

We therefore affirm the trial court's order.

## FACTS

Appellant William Evans and respondent Joy Evans[2] married in July 1985. They separated in March 2007.

---

[2] We refer to the parties by their given names for the sake of clarity; we intend no disrespect.

2.

The only significant asset in their marital estate was a house located in Kern County. They agreed that William would buy out Joy's interest in the residence, and Joy prepared a typed "PRE-DIVORCE AGREEMENT" to that effect (Agreement). Both parties signed the Agreement on May 5, 2007. At the time of signing, the parties assumed the residence had a net equity of $600,000 and the Agreement accordingly called for William to pay $300,000 to Joy for her one-half interest.

The terms of the Agreement unequivocally show that it was made in contemplation of the dissolution of William and Joy's marriage. The Agreement was entitled "PRE-DIVORCE AGREEMENT" and the terms of the final payment were to "BE DETERMINED AT THE TIME OF THE FINAL DIVORCE AGREEMENT." Further, the Agreement specified that the disposition of any assets not covered by the Agreement were to "BE SET FORTH IN THE FINAL DIVORCE AGREEMENT."

Before signing the Agreement, neither party served the other with either a preliminary or final disclosure declaration. However, there is no indication in the record that Joy was "in possession of information pertinent to the contractual exchange [and] elect[ed] not to reveal that information to [William]." (Wonnell, *The Structure of a General Theory of Nondisclosure* (1991) 41 Case W. Res. L.Rev. 329.) Thus, there was no "failure to disclose intrinsic facts pertaining to the [residence]" and no "failure to disclose extrinsic facts pertaining to the general environment affecting the economic value of [the residence]." (*Id*. at p. 332.)

After signing the Agreement, William paid Joy $197,000, leaving an unpaid balance of $103,000.

## PROCEEDINGS

In February 2009, Joy filed a petition for dissolution of marriage. In early 2010, Joy and William served preliminary disclosure declarations on one another.

In October 2012, Joy served William with a final disclosure declaration. William never served Joy with a final disclosure declaration.

3.

At the time of the dissolution proceedings, their residence had an approximate fair market value of $420,000 and was encumbered by a promissory note secured by a first deed of trust with an unpaid balance of $350,000, making the actual net equity of the residence about $70,000.  The value of the equity was less than the $103,000 William still owed Joy under the terms of the Agreement.

William brought a motion to set aside the Agreement, claiming that the parties' failure to comply with the disclosure declaration requirements of Chapter 9 prior to signing the Agreement made the Agreement invalid and unenforceable.  The motion to set aside was bifurcated and heard on declarations and written argument.

In September 2012, the trial court issued a tentative decision that the Agreement was valid and enforceable.  The trial court stated that by signing the Agreement prior to filing a petition for dissolution, the parties' failure to exchange disclosure declarations was irrelevant and did not prevent the enforcement of the Agreement.  The trial court ordered the terms of the Agreement be incorporated into a judgment of dissolution of marriage dividing the parties' community property.

In October 2013, the trial court issued an order and agreed statement of facts.

In November 2013, William timely filed a motion to appeal the order on the bifurcated issue, pursuant to California Rules of Court, rule 5.392(d)(1), which was granted by this court.[3]

## DISCUSSION

I.  JUDICIAL REVIEW

A.  <u>Issues Presented</u>

The primary issue on appeal is whether a settlement agreement made before the filing of a petition for the dissolution of marriage, but in contemplation of it, is

---

[3]   We also issued an order making "the partial record filed with the 'MOTION TO APPEAL,'" namely exhibits A through D, the record on appeal.

unenforceable due solely to the parties' failure to first serve each other the disclosure declarations described in the Family Code. Our answer is no.

During oral argument, William's counsel identified two additional issues that would arise if he prevailed on the primary issue.

First, if the exchange of disclosure declarations was required, was William required to show prejudice in regard to the Agreement to obtain an order setting it aside? In other words, did he have to show prejudice to obtain relief? Second, was William's failure to serve a final disclosure declaration after Joy served hers in October 2012 fatal to his motion to set aside the Agreement, which was prepared and signed over five years earlier? Because we have decided against William on the primary issue and concluded a pre-petition agreement is enforceable without an exchange of disclosure declarations, we do not reach these last two issues.

B.      Standard of Review

This appeal presents questions of statutory construction, which are questions of law subject to independent review on appeal. (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375.)

C.      Basic Principles of Statutory Construction

The primary function of a court construing a statute is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387.) The first step in statutory construction is to scrutinize the actual words of the statute, "giving them a plain and commonsense meaning." (*People v. Valladoli* (1996) 13 Cal.4th 590, 597.)

This "plain meaning" rule requires that the language of a statute first be given the meaning it bears in ordinary use. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) When the statutory language is clear and unambiguous there usually is no need for further construction, and courts adopt the plain, or literal, meaning of that language. (*Ibid*.)

However, the "plain meaning" rule is not absolute. (*Lungren v. Deukmejian*, *supra*, 45 Cal.3d at p. 735.) If the literal meaning of a word or sentence, when considered in the context of a statute, is contrary to the legislative intent apparent in the statute, its literal construction will not be adopted. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387; *Bob Jones University v. United States* (1983) 461 U.S. 574, 586 [a well-established canon of statutory construction provides that literal language should not defeat the plain purpose of the statute].) Similarly, a literal construction of statutory language that leads to absurd results may be disregarded for a construction that furthers the legislative intent apparent in the statute. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 245.)

If statutory language is susceptible to more than one reasonable interpretation, it is ambiguous and a court will look to a variety of extrinsic aids to construe its meaning. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008.) Particularly, a court will consider the statute's objectives, the evils it seeks to remedy, its legislative history, public policy, and the statutory scheme of which the statute in question is a part. (*Ibid.,* citing *People v. Shirokow* (1980) 26 Cal.3d 301, 306-307; *Morse v. Municipal Court* (1974) 13 Cal.3d 149, 156; *Pennisi v. Department of Fish & Game* (1979) 97 Cal.App.3d 268, 273.) With these extrinsic aids, a court "must select the construction that comports most closely with the apparent intent of the Legislature," in order to promote, rather than to frustrate the purpose of the statute, and to "avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.)

II.     DISCLOSURE STATUTES

        A.      General Provisions

Chapter 9 requires parties seeking dissolution of their marriage to prepare and serve both preliminary and final disclosure declarations of assets and liabilities on one another. Disclosure declarations must include the "full and accurate disclosure of all

6.

assets and liabilities in which one or both parties may have an interest." (§ 2103.) In requiring such disclosures, the Legislature set forth the following findings and goals:

> "(a) … (1) to marshal, preserve, and protect community and quasi-community assets and liabilities that exist at the date of separation so as to avoid dissipation of the community estate before distribution, (2) to ensure fair and sufficient child and spousal support awards, and (3) to achieve a division of community and quasi-community assets and liabilities on the dissolution or nullity of marriage or legal separation of the parties as provided under California law.

> "(b) … [To reduce] the adversarial nature of marital dissolution and the attendant costs by fostering full disclosure and cooperative discovery." (§ 2100, subds. (a), (b).)

The Legislature further stated that "[i]n order to promote this public policy, a full and accurate disclosure ... must be made in the early stages of a proceeding for dissolution of marriage or legal separation," and that "each party has a continuing duty to immediately, fully, and accurately update and augment that disclosure to the extent there have been any material changes so that at the time the parties enter into an agreement for the resolution of any of these issues, or at the time of trial on these issues, each party will have a full and complete knowledge of the relevant underlying facts." (§ 2100, subd. (c).)

### B.    Preliminary Disclosure Declaration

Preliminary disclosure declarations are governed by section 2104, which establishes that "[a]fter or concurrently with service of the petition for dissolution or nullity of marriage or legal separation of the parties, each party shall serve on the other party a preliminary declaration of disclosure ... on a form prescribed by the Judicial Council." (former § 2104, subd. (a).)

The preliminary disclosure declaration must include (1) the identity of all of the declarant's assets and liabilities, (2) the declarant's percentage of ownership in each, and

7.

(3) must provide the other party with an income and expense declaration if one has not already been produced. (§ 2104, subds. (c)(1), (2) & (e).)

C.     Final Disclosure Declaration

Section 2105 requires an exchange of final disclosure declarations. Subdivision (a) of section 2105 establishes the timeframe in which a final disclosure declaration must be made, stating: "Except by court order for good cause, before or at the time the parties enter into an agreement for the resolution of property or support issues other than pendente lite support, or, if the case goes to trial, no later than 45 days before the first assigned trial date," final disclosure declarations must be served. (§ 2105, subd. (a).)

Section 2105 also provides the means by which parties to a proceeding for dissolution may waive final disclosure declarations. Such a waiver (1) may only occur after the exchange (by both parties) of preliminary disclosure declarations, and (2) must be by the mutual, knowing, intelligent, and voluntary action of both parties. (§ 2105, subd. (d)(1) & (4).)

D.     Consequences of Nondisclosure

Section 2106 restricts the actions of a court when final disclosure declarations are not provided; it provides in part: "Except as provided in subdivision (d) of Section 2105, Section 2110, or absent good cause as provided in Section 2107, no judgment shall be entered with respect to the parties' property rights without each party ... having executed and served a copy of the final declaration of disclosure."

Subdivision (d) of section 2105 provides for the mutual waiver of the exchange of final disclosure declarations. Section 2110 addresses default judgments. Thus, courts may enter a judgment when final disclosure declarations have not been exchanged in cases of mutual waiver or default judgment. The final exception in section 2106 allows a judgment to be entered when there is good cause for the failure to provide a final disclosure declaration and refers to section 2107.

8.

Section 2107 addresses the failure of a party to serve the required disclosure declarations and the procedures a complying party must follow to obtain the remedies provided. First, a party that has complied with the disclosure requirements may request that a noncomplying party prepare and produce the missing declaration. (§ 2107, subd. (a).) Second, if the noncomplying party still fails to produce the appropriate declaration, the complying party may (1) file a motion to compel a further response, (2) file a motion for an order preventing the other party from presenting any evidence on issues that would have been included in the missing declaration, or (3) file a motion showing good cause for the complying party to waive receipt of the missing declaration. (§ 2107, subd. (b).) Further, section 2107, subdivision (c) provides that should "a party fail[ ] to comply with any provision of this chapter, the court *shall*, in addition to any other remedy provided by law, impose money sanctions against the noncomplying party." (Italics added.) (See § 12 ["[s]hall" is mandatory].)

Section 2107, subdivision (d) directs a court that has entered a judgment despite a party's failure to comply with the disclosure declaration requirements to set the judgment aside, emphasizing that "[t]he failure to comply with the disclosure requirements does not constitute harmless error." The provision also states that courts are not required to set aside a judgment in certain situations where the court has granted a complying party's voluntary waiver of the disclosure requirement, provided the complying party has not committed actual fraud or perjury. (§ 2107, subd. (d)(1), (2).)

III.     INTERPRETATION OF DISCLOSURE PROVISIONS

William contends that the provisions in Chapter 9 should be interpreted to require the exchange of disclosure declarations before the parties enter into a pre-petition agreement resolving their property rights. We disagree.

9.

A. **A Preliminary Disclosure Declaration is Required Only After the Commencement of a Proceeding**

Section 2104 explicitly mandates service of a preliminary disclosure declaration "[a]fter or concurrently with service of the petition for dissolution." (former § 2104, subd. (a).) The phrase "[a]fter or concurrently" is unambiguous as to the timing of the disclosure. Service of a preliminary disclosure declaration is not required *before* the petition for dissolution is filed and served. Instead, the petition prompts the requirement for an exchange of preliminary disclosure declarations and, therefore, preliminary disclosure declarations are obligatory only when a dissolution proceeding has commenced.

Therefore, no violation of section 2104 occurs when spouses enter into a pre-petition agreement without exchanging preliminary disclosure declarations.

B. **A Final Disclosure Declaration is Required Only After Service of a Preliminary Disclosure Declaration, and, Therefore, Only After the Commencement of a Proceeding**

Section 2105, subdivision (a) addresses the service of final disclosure declarations using language that is not as clear about timing as section 2104:

> "Except by court order for good cause, before or at the time the parties enter into an agreement for the resolution of property or support issues other than pendente lite support, or, if the case goes to trial, no later than 45 days before the first assigned trial date, each party, or the attorney for the party in this matter, shall serve on the other party a final declaration of disclosure ...."

William argues the phrase "before or at the time the parties enter into an agreement for the resolution of property" should be interpreted to mean that section 2105 requires the service of a final disclosure declaration before a pre-petition agreement is signed. We will assume for the sake of argument that section 2105 is reasonably susceptible to the interpretation proposed by William (i.e., is ambiguous). Therefore, our task is to ascertain the Legislature's intent in order to promote, rather than frustrate that

10.

purpose, and avoid an interpretation leading to an absurd result. (*People v. Jenkins, supra,* 10 Cal.4th at p. 246.)

We conclude that the reference in section 2105 to "an agreement" was intended to include only post-petition agreements. First, reading section 2105 contextually within the statutory scheme of Chapter 9 provides a clear timeframe for providing final declarations of disclosure. Put simply, the plain meaning of the terms "preliminary" and "final"[4] demonstrate the Legislature's intent to require first a preliminary declaration, followed by a final declaration.[5]

Because it is evident that the service of a final disclosure declaration is intended to occur after the service of a preliminary disclosure declaration, the time constraints governing the service of preliminary declarations dictate the earliest time at which a final disclosure declaration can be required. Because a preliminary declaration is required only if a petition is filed, it logically follows that the exchange of final declarations is not required until later in that proceeding, not before the proceeding began. William's proposed interpretation inverts this order and thus negates the plain meaning of the terms "preliminary" and "final."

---

[4] Webster's Third New International Dictionary (1993) page 1789 defines preliminary as "something that precedes a main discourse, work, design, or business: something introductory or preparatory," and as "lying before: leading to: being at the threshold of." Black's Law Dictionary (9th ed. 2009) page 1299 defines preliminary as "[c]oming before and usu. leading up to the main part of something."

Final is defined as "relating to or occurring at the end or conclusion: last: terminating." (Webster's 3d New Internat. Dict., *supra*, p. 851.)

[5] "Preliminary" procedures, followed by "final" procedures are common in the progression of statutes. Articles 2 and 3 of part 10, division 7 of the Probate Code are just one example, where article 2 (Prob. Code, §§ 11620-11624) provides for preliminary distribution, and is followed by article 3 (Prob. Code, §§ 11640-11642), providing for final distribution of the estate.

11.

Second, a general rule of statutory construction is that statutes are not read in isolation, but must be interpreted in a manner that brings harmony to the entire statutory scheme. (*Rea v. Blue Shield of California* (2014) 226 Cal.App.4th 1209, 1230.) Reading sections 2104 and 2105 in the context created by other provisions in the Family Code, it becomes clear that the Legislature did not intend the requirement for final disclosure declarations to apply to pre-petition agreements.

### 1. *Division Level*

Division 6 of the Family Code contains the provisions governing dissolution of marriage. The division's general provisions clearly demonstrate that the application of its provisions is predicated upon the existence of a proceeding. For example, section 2000 states that part 1 of division 6 applies "to a *proceeding* for dissolution of marriage, for nullity of marriage, or for legal separation of the parties." (Italics added.) Similarly, section 2010 defines the scope of the court's jurisdiction "[i]n a *proceeding* for dissolution of marriage ... nullity ... or for legal separation."

Because sections 2104 and 2105 are part of division 6 of the Family Code, these general provisions at the beginning of the division support the interpretation that the division's requirements, including those relating to disclosure declarations, apply when there is a proceeding for the dissolution of marriage.

### 2. *Chapter Level*

Sections 2104 and 2105 also are part of Chapter 9, a more specific level of statutory organization that concerns the disclosure of assets and liabilities. The general provisions in Chapter 9 specify that the "chapter applies to any *proceeding* commenced on or after January 1, 1993." (§ 2113, italics added.) Notably, section 2100 provides that "in order to promote ... public policy ... a full and accurate disclosure of all assets and liabilities ... must be made *in the early stages of a proceeding* for dissolution of marriage or legal separation of the parties." (§ 2100, subd. (c), italics added.)

12.

### 3. What is a Proceeding

The statutory language at the division and chapter levels establishes that the disclosure requirements in Chapter 9 apply when there is a "proceeding." The statutory definition of this term is provided by section 110, which states in its entirety: "'Proceeding' includes an action."[6] This terse definition does not create an ambiguity because section 2330[7] identifies the method by which a proceeding is commenced:

> "(a) A proceeding for dissolution of marriage or for legal separation of the parties is commenced by filing a petition entitled 'In re the marriage of _____ and _____' which shall state whether it is a petition for dissolution of the marriage or for legal separation of the parties."

This provision identifies precisely *when* a proceeding is commenced—the filing of a petition.

Therefore, the provisions in division 6 and Chapter 9 stating that they apply to a "proceeding" are consistent with our interpretation of sections 2104 and 2105 to mean that disclosure declarations need not be served pre-petition—that is, before a "proceeding" has commenced.

### 4. Public Policy

Despite the plain meaning of the terms "proceeding," "preliminary," and "final," William urges this court to expand the application of section 2105. William contends "[p]ublic policy requires that Family Code section 2105 be interpreted to require the

---

**6** The Law Revision Commission Comment of section 110 notes that this definition serves to avoid "hypertechnical arguments that the application of a particular rule depends on the fortuity of whether a particular matter is termed an action or a proceeding." (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (2004 ed.) foll. § 110, pp. 26-27; see Code Civ. Proc., §§ 21 [the two classes of judicial remedies are actions and special proceedings], 22 ["action" defined] & 23 ["special proceeding" defined].)

**7** Section 2330 is one of the procedural provisions contained in part 3 of division 6 of the Family Code.

exchange of declarations of disclosure before the parties enter into a pre-petition agreement …."[8] Citing the legislative findings of section 2100, William argues this court should focus on the intent of the parties to an agreement and conclude a final disclosure declaration must be served prior to any agreement between spouses who intend to divorce, regardless of when the agreement was made or whether a "proceeding" is pending.

William relies on *Burkle* to promote his contention that disclosure declarations are mandated by the intent of the parties rather than whether an agreement was made pre-petition or post-petition.

In *Burkle*, a wife filed for dissolution of marriage in June 1997. In August, both parties were seriously considering reconciliation, and resumed living together in September 1997. (*Burkle, supra*, 139 Cal.App.4th at p. 718.) In November 1997, while the dissolution action was still pending, they executed an agreement resolving all present and future financial issues between them. (*Ibid*.) They continued to live together for over four years, parting in April 2002. (*Ibid*.) In June 2003, the wife filed a second petition for dissolution of marriage.[9] (*Ibid*.) In that proceeding, the wife sought to have the 1997 post-petition agreement set aside as invalid and unenforceable. (*Ibid.*) The wife challenged the validity of the post-petition agreement on many grounds, including the lack of service of the disclosure declarations mandated by Chapter 9. (*Id*. at p. 745.)

---

[8]     In general, California public policy disfavors agreements that promote the dissolution of marriage—that is, make divorce attractive or lucrative. California courts, however, will uphold property settlement agreements between spouses in instances where a separation already had taken place and preservation of the marriage was out of the question. (*Hill v. Hill* (1943) 23 Cal.2d 82 [property settlement agreement between a husband and wife, who were still married but living separately, did not violate public policy despite agreement being contingent upon wife obtaining a divorce decree].)

[9]     A request to dismiss the first dissolution proceeding was filed two days before the wife served the second petition on her husband. (*Burkle, supra*, 139 Cal.App.4th at p. 749, fn. 33.)

The trial court concluded the agreement was enforceable and the requirements of section 2100, et seq. for disclosure declarations "'only apply to agreements entered into incident to a dissolution of marriage or legal separation action that is proceeding to judgment.'" (*Burkle, supra*, 139 Cal.App.4th at p. 746.) The appellate court agreed. (*Ibid.*)

The appellate court stated that "sections 2104 and 2105 were not intended to and do not apply to a postmarital agreement that was not executed in contemplation of the imminent dissolution of the marriage." (*Burkle, supra*, 139 Cal.App.4th at p. 746.) The court supported its view of the Legislature's intent by stating:

> "The legislative findings and declarations in Family Code section 2100 make clear that the statute applies to agreements that contemplate a judgment dissolving the marriage, not agreements that contemplate a reconciliation. The structure and language of other provisions of the statute likewise make this intention clear." (*Ibid.*)

The appellate court in *Burkle* addressed the wife's argument that a dissolution proceeding was pending when the agreement was executed, and therefore disclosure declarations were required, by stating:

> "None of these arguments is sufficient to induce us to apply *a statute governing dissolution proceedings to circumstances in which the parties are not in fact using the judicial system to seek dissolution of their marriage*. It may be a preferable rule, where a petition for dissolution has been filed, to require spouses who wish simultaneously to attempt reconciliation and resolve their financial disputes to file sworn disclosure declarations, *unless the dissolution proceeding is dismissed*. That, however, is a matter for the Legislature, and not for the courts, to undertake." (*Burkle, supra*, 139 Cal.App.4th at p. 748, italics added.)

In addition, the court acknowledged the role of the dissolution proceeding in footnote 32 of the opinion:

> "Needless to say, given the vagaries of available proof, the parties to a dissolution proceeding who hope to reconcile and at the same time resolve property issues in a postmarital agreement would be well advised *to dismiss the proceeding before executing an agreement*. Dismissal will avoid the

15.

uncertainties attendant upon the need to later present sufficient proof that an agreement was executed while the dissolution proceeding was in abeyance and that neither party contemplated the imminent dissolution of the marriage." (*Burkle, supra*, 139 Cal.App.4th at p. 749, fn. 32, italics added.)

These statements indicate the *Burkle* court did not believe the disclosure requirements of Chapter 9 applied when a petition for dissolution was not pending. Therefore, we read *Burkle* to mean that the requirements in sections 2104 and 2105 for the service of preliminary and final disclosure declarations apply when two conditions are met. First, the spouses who executed the settlement agreement are parties to a marital dissolution proceeding. Second, the parties negotiated and executed the settlement agreement in contemplation of a judgment dissolving the marriage.[10]

William reads *Burkle* differently and argues the court's reference to "agreements that contemplate a judgment dissolving the marriage" eliminated the first condition and thereby expanded the disclosure requirement to all settlement agreements made "in contemplation of the imminent dissolution of … marriage." (*Burkle, supra,* 139 Cal.App.4th at p. 746.)

We believe William has taken the statements in *Burkle* out of context and, as a result, has given too large of a role to the parties' intentions. When *Burkle* is read in its entirety, it is clear that the intent of the parties is not the sole trigger for the exchange of disclosure declarations. A dissolution proceeding must be pending and the parties must have executed the agreement with the intent to dissolve their marriage.

In the present case, the trial court recognized the role of the dissolution proceeding as a limit on the application of Chapter 9's disclosure requirements:

---

**10**    The first condition is based on the statutory text discussed in parts III.A through III.B.3, *ante*. The second condition is based on legislative intent that the *Burkle* court inferred from statutory text—primarily section 2100. The legislative findings and declarations of policy contained in section 2100 are set forth in part II.A, *ante*.

"While the court of appeal in *Burkle* stated that the statutory requirements of section 2100 'applies to agreements that contemplate a judgment dissolving the marriage' [citation], that language cannot be read to apply the requirements of [Chapter 9 to] an agreement entered prior to the ... dissolution proceeding and thereby expanding the requirement beyond that contained in the statute."

Similarly, we conclude the Legislature's intent to *limit* the disclosure requirements to agreements executed in contemplation of dissolution of the marriage does not mean the Legislature intended the disclosure requirements to apply to *all* agreements executed in contemplation of dissolution of the marriage. Instead, we infer the Legislature intended the disclosure requirements to apply (1) after the service of a petition for dissolution and (2) if the parties executed the agreement in contemplation of a judgment dissolving the marriage. Under this interpretation of Chapter 9, its requirements for exchanges of disclosure declarations do not apply to pre-petition agreements.

IV.     APPLICATION OF STATUTORY INTERPRETATION TO THIS CASE

The primary dispute between the parties was how to interpret Chapter 9. Having resolved that dispute, the application of our statutory interpretation to the facts of this case is straightforward. The parties stipulated they signed the Agreement in May 2007 without exchanging disclosure declarations, nearly two years before Joy filed the petition for dissolution of marriage in February 2009.

Under our interpretation of Chapter 9, disclosure declarations were not required when the Agreement was signed. Therefore, the parties' failure to exchange disclosure declarations in May 2007 is not grounds for invalidating the Agreement.

V.     OTHER ISSUES

A.     Prejudice in Making the Agreement

William argues, if the exchange of disclosure declarations was required, the Agreement should be set aside without requiring him to show the nondisclosure prejudiced his decision to enter the Agreement. William bases this argument on a

17.

sentence in section 2107, subdivision (d), which states: "The failure to comply with the disclosure requirements does not constitute harmless error."

In response, Joy refers to subdivision (c) of section 2105, which provides: "In making an order setting aside a judgment for failure to comply with this section, the court may limit the set aside to those portions of the judgment materially affected by the nondisclosure."

Because we have decided the trial court correctly denied William's motion on the ground that an exchange of disclosure declarations was not required, we need not address whether the absence of a showing of prejudice in the record before us provides an alternate ground for denying William's motion to set aside the Agreement.

B.    William's Failure to Serve a Final Disclosure Declaration

Joy argued that William was not entitled to the relief provided in subdivision (d) of section 2107 (i.e., setting aside a judgment) because, among other things, that provision applies only to cases where *both* parties have failed to comply with the mandatory disclosure requirements. Based on this interpretation and the fact she served both a preliminary and final disclosure declaration after the dissolution proceeding commenced, Joy contends she complied with the disclosure requirements and, therefore, section 2107, subdivision (d) does not apply to this case.

During oral argument, William's counsel stated Joy's position presented the issue of whether William's failure to exchange final disclosure declarations was a fatal flaw that precluded the relief he sought. In effect, William argues that his failure to serve a final disclosure declaration on Joy is not a separate ground for denying his motion to set aside the Agreement.[11]

---

[11]    During oral argument, counsel for William indicated he was not arguing William's failure to serve a final disclosure declaration rendered the Agreement unenforceable. Such an argument, if made, had little chance of success because it would have allowed William to control the enforceability of the Agreement by failing to comply with the

18.

These arguments about whether William's failure to serve a final disclosure declaration provided a basis for denying him relief are relevant only if William prevailed on his argument that the Agreement was not enforceable without an exchange of pre-petition disclosure declarations. Because William did not prevail on that issue, we do not address whether his failure to serve a final disclosure declaration required the denial of his motion.

## DISPOSITION

The judgment is affirmed. Respondent shall recover her costs on appeal.

_____
Franson, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Chittick, J.*

---

statute, which would violate the maxim of jurisprudence stating "[n]o one can take advantage of his own wrong." (Civ. Code, § 3517.)

\*        Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19.