Filed 2/6/15  Betancourt v. Bella Vista Estates CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RUBEN BETANCOURT et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BELLA VISTA ESTATES et al., <br><br> Defendants; <br><br> MONTELEONE & McCRORY, LLP, <br><br> Objector and Appellant. | F068772 <br><br> (Super. Ct. No. 09CECG01724) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Mark Wood Snauffer, Judge.

Monteleone & McCrory, William J. Ingalsbe and William R. Baerg for Objector and Appellant.

Law Offices of Golub & Associates, and Mitchell S. Golub for Plaintiffs and Respondents.

-ooOoo-

In this appeal, a law firm challenges an award of $2,250 in sanctions imposed against it for pursuing a meritless motion for summary adjudication.

The law firm contends (1) the motion for sanctions made pursuant to Code of Civil Procedure section 128.7[1] was procedurally defective, (2) the underlying motion for summary adjudication had merit and should have been granted, and (3) rulings on similar motions the law firm filed in other cases did not render the motion for summary adjudication frivolous or presented for an improper purpose.

We disagree. First, the trial court resolved a question of fact regarding the law firm's subjective intent when it determined the summary adjudication motion was presented for an improper purpose. Second, the trial court's finding of improper purpose was one of the inferences reasonably drawn from the circumstantial evidence in the record and, thus, the finding is supported by substantial evidence.

We therefore affirm the award of sanctions.

## FACTS AND PROCEEDINGS

The lawsuit began in May 2009 when Ruben Betancourt and over 70 other homeowners sued Bella Vista Estates, Laurel Tree Homes, Inc., and Lambeth Construction of California, Inc. (Developers) for defective construction of homes located in Parlier, California. The plaintiffs alleged causes of action for (1) strict liability, (2) negligence, (3) nuisance, (4) breach of warranty, (5) negligent failure to disclose, (6) negligent misrepresentation, and (7) negligent infliction of emotional distress.

Developers, in turn, filed a cross-complaint for indemnification against many of the contractors, subcontractors, and suppliers involved in the construction of the homes. One of the cross-defendants was Builders Concrete, Inc. (Builders). Builders hired the law firm of Monteleone & McCrory, LLP (Objector) to represent it in the lawsuit.

In November 2011, Builders filed an answer to Developers' cross-complaint that asserted (1) the concrete supplied by Builders was furnished in compliance with a third

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise stated.

party's specification and (2) some third party may have required water to be added to the concrete and agreed to indemnify Builders if a claim arose from the addition of water.

In August 2013, Objector filed a motion seeking summary adjudication of the following issue involving plaintiffs who owned 57 parcels of real estate: Did Builders owe a duty to indemnify the Developers with respect to the claims brought by plaintiff homeowners who had assigned their right to sue for property damages to their respective lenders? The motion argued plaintiffs did not have standing to pursue the claims alleged against Developers.

The assignment clauses in question were contained in deeds of trust signed by plaintiffs to provide security for a loan obtained from a lender.

For example, a deed of trust between Manuel and Bertha Alvarez and BNC Mortgage, Inc. (Alvarez deed of trust) contained a section titled "Assignment of Miscellaneous Proceeds; Forfeiture" that stated in part: "All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender." The Alvarez deed of trust defined "Miscellaneous Proceeds" as "any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation …; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property."

On September 16, 2013, before plaintiffs filed an opposition to Builders' motion for summary adjudication, plaintiffs served Builders with a notice of motion and motion for sanctions under section 128.7. The notice stated the motion for sanctions would be heard on October 24, 2013, in Department 503. The motion requested sanctions in the amount of $3,250[2] on the ground Builders' motion for summary adjudication "is being

---

[2]An attorney's declaration attached to plaintiffs' motion for sanctions predicted that counsel would spend about 14.5 hours valued at $3,250 in preparing the opposition papers to the motion for summary adjudication and arguing the motion.

maintained without merit, without legal authority, [and] for the improper purpose of causing unnecessary delay and expense."

Plaintiffs' motion for sanctions was accompanied by a request for judicial notice. However, copies of the four documents listed in the request were not attached. The documents were two nearly identical motions for summary adjudication presented by Objector on behalf of another client in other Fresno County cases and the two orders denying those motions.

Plaintiffs and Developers opposed the motion for summary adjudication, arguing Builders lacked standing to challenge plaintiffs' ability to sue because (i) Builders were not parties to the deeds of trust containing the assignment clause and (ii) a nonparty is not allowed to enforce a contract between others. In addition, plaintiffs argued they had not assigned their causes of action and, therefore, had standing to sue Developers for property damage.

In November 2013, the trial court filed a written order denying Builders' motion for summary adjudication and granting plaintiffs' motion for sanctions under section 128.7. The court awarded plaintiffs sanctions in the amount of $2,250. The court directed Objector to pay the sanctions to plaintiffs' counsel within 30 days of service of the order.

Later in November, a request for dismissal of Builders was submitted to the clerk of the court, who entered the dismissal as requested.

In December 2013, Objectors filed a notice of appeal from the order imposing sanctions pursuant to section 128.7.

## DISCUSSION

### I. STANDARD OF REVIEW

Appellate courts apply the abuse of discretion standard of review to orders awarding sanctions under section 128.7. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167.) The abuse of discretion standard calls for varying levels of deference depending on

the aspect of the trial court's ruling under review. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)

First, the trial court's findings of fact will be upheld if supported by substantial evidence. (*Haraguchi v. Superior Court*, *supra*, 43 Cal.4th at p. 711.) Second, its conclusions on questions of law are subject to independent review. (*Id*. at p. 712.) Third, where the particular legal criteria being applied requires the trial court to consider and weigh multiple factors, the result of that weighing process will be upheld on appeal so long as the trial court did not exercise its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316; *Bank of America*, *N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089 [abuse of discretion standard measures whether, given the established evidence, trial court's decision falls within permissible range of options set forth by applicable legal criteria].)

## II. PROCEDURAL REQUIREMENTS FOR SANCTIONS

### A. Service and the Safe Harbor Period

Section 128.7, subdivision (c) sets forth certain procedural requirements that must be met before an award of sanctions is authorized. Objector argues requirements in the following provision were not met:

> "(1) A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." (§ 128.7, subd. (c)(1).)

These procedural requirements have been interpreted to mean that a party seeking sanctions must follow a two-step procedure. (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698.) The first step involves the moving party serving the offending party with the notice of motion for sanctions. This service begins a 21-day safe

5.

harbor period during which the offending party may withdraw the improper pleading or motion and thereby avoid sanctions. If the offending pleading or motion is not withdrawn, then the moving party is authorized to take the second step—filing the motion for sanctions with the court. (*Ibid.*)

The purpose of the safe harbor provision is to permit the offending party to avoid sanctions by withdrawing the improper pleading or motion during the safe harbor period and thereby save the court and the parties the time and money litigating the pleading or motion as well as the request for sanctions. (*Martorana v. Marlin & Saltzman*, *supra*, 175 Cal.App.4th at p. 699.)

### B. Contentions of the Parties

The trial court relied on the September 16, 2013, service date to conclude that Builders was given the requisite 21 days to withdraw its motion for summary adjudication, but did not do so. Its written order after hearing stated "plaintiffs have complied with the procedural requirements of section 128.7."

Objector disagrees, contending section 128.7 requires the notice of motion that triggers the 21-day safe harbor period to contain (1) the exact hearing date and (2) all of the supporting papers. Objector contends plaintiffs' motion did not satisfy these requirements because the initial motion identified October 24, 2013, as the hearing date and the accompanying request for judicial notice did not include a copy of the documents for which judicial notice was requested.

The legal foundation for Objector's contention is the text in subdivision (c)(1) of section 128.7 that states the notice of motion "shall be served as provided in Section 1010" and, in turn, the provision in section 1010 that states:

> "Notices must be in writing, and the notice of motion … *must state when*, and the grounds upon which *it will be made*, and the papers, if any, upon which it is to be based. If any such paper has not previously been served upon the party to be notified and was not filed by him, *a copy of such paper must accompany the notice*." (Italics added.)

6.

On October 7, 2013, after the 21-day safe harbor provision ended, plaintiffs acknowledge they served and filed a second version of the motion that listed the hearing date as October 31, 2013, which was seven days later than the date in the original version. Also, the second version was accompanied by a request for judicial notice that actually contained a copy of the documents subject to the request. These copies had been omitted from the request for judicial notice served on Builders with the original version of the motion for sanctions.

## C. Exact Hearing Date

Objector's argument that the original notice of motion must specify the exact hearing date is based on the wording of section 1010 and *Galleria Plus*, *Inc. v. Hanmi Bank* (2009) 179 Cal.App.4th 535. Section 1010 provides that the notice of motion "must state when … it will be made." Applying this provision in section 1010, the court in *Galleria* stated that a notice indicating the motion for sanctions would be heard "'on AAA at BBB'" failed to specify when the motion would be made and, therefore, was fatally defective. (*Galleria Plus, Inc.*, *supra*, at p. 538.)

We conclude the notice indicating the motion would be heard on October 24, 2013, is clearly distinguishable from a notice that states the motion will be heard "'on AAA at BBB.'" (*Galleria Plus*, *Inc. v. Hanmi Bank*, *supra*, 179 Cal.App.4th at p. 538.) The statutory requirement for a statement of when the motion "will be made" (§ 1010) was fulfilled in this case by the use of the October 24, 2013, hearing date. We do not think the requirement in section 1010 was intended to prevent moving parties from continuing the hearing *to a later date* as there appears to be no harm in giving the nonmoving parties more time. Furthermore, Objector has identified no statutory purpose that would be promoted by the rigid interpretation it has proposed.

Therefore, we conclude plaintiffs' notice of motion satisfied the requirement in section 1010 by stating a hearing date of October 24, 2013.

**D.     Copies of Papers Upon Which the Motion Was Based**

As background for the issue about omitted copies, we note plaintiffs' notice of motion for sanctions satisfied section 1010's requirement that it "state … the papers, if any, upon which it is to be based."  The notice stated that the motion was based on, among other things, "the request for judicial notice filed concurrently herewith."

Plaintiffs' two-page request for judicial notice asked the court to notice the existence of *Javier Rojas et al. v. River Ridge Partners*, *LLC*, Fresno Superior Court case No. 10CECG02305 (*Rojas*) filed on July 2, 2010, and *Maricela Negrete et al. v. Mission Homes et al.*, Fresno Superior Court case No. 09CECG01744 (*Negrete*), filed on May 15, 2009.  In addition, the request listed four documents filed in those cases—specifically, two motions for summary adjudication on behalf of Terry Tuell Concrete, Inc., and two minute orders denying the motions.

Because copies of the four documents were not attached to the request for judicial notice served on Builders on September 16, 2013, the question presented is whether plaintiffs' moving papers satisfied section 1010's requirement for copies, which provides: "If any such paper has not previously been served upon the party to be notified and was not filed by him, a copy of such paper must accompany the notice."  This provision contains two exceptions to the requirement for accompanying copies.  Copies are unnecessary if the papers previously were "served upon the party to be notified" or were "filed by him."  (§ 1010.)  These exceptions avoid the redundancy of providing copies of documents already held by the party to be notified.

Here, the two motions for summary adjudication on behalf of Terry Tuell Concrete, Inc., were prepared by Objector and the two attorneys listed on the caption pages were William J. Ingalsbe and Diana M. Dron.  These attorneys also are listed on the caption page of Builders' motion for summary adjudication and Builders' October 18, 2013, opposition to the motion for sanctions.  In addition, Diana M. Dron signed all three motions for summary adjudication.

In the context of motions for sanctions under section 128.7, we interpret the phrase "party to be notified" that appears in section 1010 as including both the client and the attorneys. Similarly, the phrase "filed by him" includes the client and the attorneys who filed the papers. This interpretation of the words "party" and "him" is justified in this context of a motion for sanctions because it would be improper to award sanctions against an attorney without providing him or her with notice of the motion for sanctions. Under this interpretation, Objector was a "party to be notified."

As such a party, section 1010 did not require plaintiffs to give Objector a copy of papers previously served upon it or a copy of papers filed by it. Objector had sufficient notice of (1) the two motions for summary adjudication that were signed and filed by Ms. Dron of Monteleone & McCrory and (2) the minute orders denying those motions. The law firm was fully informed about the contents of the papers upon which plaintiffs based their motion for sanctions.

Therefore, with respect to the documents identified in plaintiffs' request for judicial notice, the trial court did not commit legal error when it impliedly determined the exceptions to the requirement for service of copies of those documents applied to Objector.[3]

III. **SANCTIONABLE CONDUCT**

A. **Grounds for Sanctions**

Subdivision (b) of Section 128.7 lists four types of sanctionable conduct. This appeal is concerned with two of the four types.

First, presenting a motion or pleading "primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" is sanctionable (§ 128.7, subd. (b)(1).)

---

[3]We do not address whether the omission of the copies rendered the motion procedurally defective as to Builders because sanctions were not awarded against Builders and it is not a party to this appeal.

Second, it is improper for a motion or pleading to present claims, defenses or other legal contentions that are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7, subd. (b)(2).)

## B.      Trial Court's Determinations

Both of these grounds were mentioned in the trial court's written order. After analyzing the shaky foundation for Builders' motion for summary adjudication, the court determined: "As a result, it appears that the present motion is entirely without legal or factual merit, and it w[as] brought purely for the purpose of delay and harassment."[4]

This conclusion was based in part on the court's analysis of the assignment clauses in the various deeds of trust relied upon by Objector. The court referred to the rule that "the assignment must describe the subject matter of the assignment with sufficient particularity to identify the rights assigned." (*Mission Valley East*, *Inc. v. County of Kern* (1981) 120 Cal.App.3d 89, 96-97.) After reviewing the language in the assignment clauses that mentioned judgments, awards of damages, settlement and compensation, the court concluded the assignments at issue "cannot be interpreted as assigning the cause of action itself; i.e., the Plaintiffs still maintain the right to sue for damages to their homes." Thus, the court drew a distinction between the things a lawsuit might produce—namely, a judgment, award of damages or settlement—and the lawsuit itself.

## C.      The Assignment Provisions

Objector argues "[t]he fact that [plaintiffs] assigned their rights to recover damages to their real properties cannot be disputed. The legal effect of such a clear and unambiguous assignments on the [plaintiffs'] claims is clear." That clear legal effect is,

---

[4]By using the word "purely," the trial court went further than is required by the statute. Under subdivision (b)(1) of section 128.7, sanctions are warranted when a motion or pleading is "presented *primarily* for an improper purpose." (Italics added.)

10.

in Objector's view, that plaintiffs are not real parties in interest under section 367[5] and thus lack standing, which is a jurisdictional defect mandating dismissal of plaintiffs' lawsuit. Objector also argues the "entire purpose of the real party in interest statute would be thwarted if [plaintiffs'] interpretation [of the assignment provisions] were to prevail." We disagree with these contentions.

### 1. Scope of the Assignment

Objector's statement that plaintiffs assigned "their rights to recover damages" is an overstatement. The right to *recover* damages, which exists at the beginning of litigation, is different from the right to be *paid* damages, which exists at the end of successful litigation. This distinction is evident in Civil Code section 953, which uses the phrase "right to recover money" to define a chose or thing in action: "A thing in action is a right to recover money or other personal property by a judicial proceeding." (*Ibid*.)[6]

First, the wording used in most of the deeds of trust to describe what rights plaintiffs assigned to their lender does not mention the right to recover money or the right to bring a legal action or judicial proceeding. The contractual language in question is illustrated by the Alvarez deed of trust, which states all "Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender" and defines Miscellaneous Proceeds as "any compensation, settlement, award of damages, or proceeds paid by any third party" for property damages or misrepresentations about the property. This language clearly refers to rights to money that are no longer contingent upon the litigation—namely, the rights established by a settlement agreement, a judgment or other court award of damages—and does not extend to any right to recover money by pursuing litigation.

---

[5]Section 367 provides in full: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."

[6]There is no question that a thing in action may be assigned. Civil Code section 954 states "[a] thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."

11.

The assignment of some rights to proceeds[7] that have come into existence as the result of a lawsuit or potential lawsuit is not the same as an assignment of the *right to pursue litigation* for property damage. This distinction is similar to the distinction between dairy cows and the milk produced by the cows. The dairy farmer's assignment of the rights to the milk received from the cows does not constitute an assignment of the ownership of the cows or the right to control and care for the cows.

Second, besides the definition of miscellaneous proceeds adopted in most of the deeds of trust, other language in the assignment clause indicates an intention to limit the scope of the assignment and exclude the right to pursue litigation. That language states the assigned miscellaneous proceeds "shall be paid to Lender." The phrase "shall be paid" indicates the lenders did not intend to acquire ownership of the litigation because it does not make sense to say that the right to pursue litigation "shall be paid to Lender." In contrast, it does make sense to say the money generated by litigation "shall be paid to Lender."

Third, a provision in the deeds of trust addressing the assignment of Miscellaneous Proceeds explicitly distinguishes between the "right of action" and the Miscellaneous Proceeds generated by litigation. That provision defines "Opposing Party" as "the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a *right of action* in regard to Miscellaneous Proceeds." (Italics added.) This definition's reference to both Miscellaneous Proceeds and a right of action would be unnecessary (i.e., redundant) if Miscellaneous Proceeds included the right of action. In addition, the statement the borrower has a right of action—particularly its use of the present tense verb "has"—indicates the right of action was retained by the borrower and was not assigned along with the Miscellaneous Proceeds.

---

[7]We refer to *some* rights because plaintiffs retained the right to have the proceeds applied for their benefit, either to reduce the debt or to repair the damage to their property. (See pt. III.D., *post*.)

12.

Fourth, another indication the chose or thing in action was not assigned is the absence of provisions addressing how the lender will conduct the litigation and any rights it may have regarding the reimbursement of costs. Section 9 of the deeds of trust authorizes the lenders to appear in court and pay reasonable attorney fees, but this authorization is triggered only in certain situations, such as when the borrower abandons the property or when "there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument." This description of the limited circumstances when a lender may appear in court demonstrates the lender and borrower intended the borrower to retain ownership of the right to pursue litigation in situations not covered by the terms of section 9 of the deed of trust.

We note Objector's appellate briefing has ignored (1) the "shall be paid to Lender" phrase in the assignment clause, (2) the definition of "Opposing Party," and (3) the language in section 9 of the deeds of trust regarding legal proceedings and attorney fees.

Objector relies on *D & M Financial Corp. v. City of Long Beach* (2006) 136 Cal.App.4th 165 (*D & M Financial*), but that case did not establish the assignment provision in question deprived the borrower of the right to pursue litigation for property damages. In *D & M Financial*, the lender held a deed of trust with an assignment of miscellaneous proceeds nearly identical to the assignments at issue in this appeal. (*Id*. at p. 177.) The court described the provision as assigning "a right to recover an inverse condemnation judgment" and thereby giving the lender "a sufficient ownership interest" in the real property to bring an inverse condemnation action. (*Ibid*.) The determination the lender's interest was *sufficient* to bring the inverse condemnation action does not establish the borrower no longer owned *any* right to pursue litigation. In *D & M Financial*, the sufficiency of the lender's interest was bolstered by the fact the lender had acquired the property through foreclosure before the appeal was filed. (*Id*. at p. 175, fn. 1.) Thus, the court did not consider whether the borrower could have pursued the inverse condemnation suit before the foreclosure, and the court's holding the lender had a sufficient interest to pursue the suit does not imply the borrower had no right to pursue

13.

litigation.  Therefore, we do not agree with Objector's position that *D & M Financial* establishes plaintiffs own no right to pursue litigation and, therefore, lack standing in their action against Developers.

Based on the provisions in the deeds of trust discussed above, we conclude the plain meaning (i.e., a literal reading) of the assignment provisions is that the borrower did not assign the right to pursue litigation against Developers for property damages.  The last step in our analysis is to examine the literal reading and make sure it does not frustrate the purpose of the deeds of trust or produce absurd consequences that could not have been intended by the parties if they had considered them.  (Cf. *In re Marriage of Evans* (2014) 229 Cal.App.4th 374, 380 [plain meaning rule of statutory construction is not absolute; a literal construction should not be adopted if it defeats purpose of the statute or leads to absurd results].)  A literal interpretation of the deeds of trust makes sense in this context because it is favorable to the lender—the party that prepared the deed of trust—by making the borrower responsible for investing time and other resources in pursuing the litigation while allowing the lender to benefit from the results achieved by the borrower.[8]  Thus, a literal interpretation of the assignment clause furthers the purpose of the deed of trust, which is to provide security for the debt owed to the lender.  As to the possibility a literal interpretation might produce absurd consequences, Objector has not identified any such consequences and none are apparent to us.  Therefore, we conclude a literal interpretation of the assignment provisions is appropriate.

---

[8]In effect, the assignment of Miscellaneous Proceeds is the inverse of an assignment for collection in which legal title to the chose in action is transferred to the assignee and the assignor retained an equitable interest in the thing assigned.  (See *Clark v. Andrews* (1952) 109 Cal.App.2d 193, 198 [assignment for collection vests legal title in assignee, which is sufficient to enable him to recover in a legal proceeding].)  Under the deeds of trust, the borrowers retained legal title to the chose in action, which allowed them to pursue legal proceedings, and assigned to the lenders an interest in the proceeds of the litigation.

## 2. Comparison to Other Assignment Provisions

The obvious distinction between owning a right to pursue litigation and owning the right to proceeds from that litigation is reinforced by the assignment provision in the deeds of trust used by World Savings Bank.[9] Paragraph 18 of those deeds of trust is titled "Injury to Property; Assignment of Rights" and states:

> "An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property … which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights."

This assignment covers more than proceeds. It explicitly includes "rights to bring legal action against persons, other than the Lender, for injury or damage to the Property."

Therefore, the assignment provision in the five deeds of trust used by World Savings Bank are a clear example of an assignment clause that covers both the legal action and the proceeds that might be generated by the legal action.

## 3. Conclusion Regarding Interpretation of Assignment Provisions

Objector's position that the 52 deeds of trust used by lenders other than World Savings Bank contained an assignment provision that clearly and unambiguously transferred both (1) the right to bring lawsuits and (2) the proceeds generated by those lawsuits is wrong and, moreover, fails to meet an objective standard of reasonableness.

---

[9]Copies of these five deeds of trust benefiting World Savings Bank were submitted as exhibits 24, 28, 29, 54 and 70 in support of Builders' separate statement of undisputed facts. Paragraphs 58, 68, 71, 138 and 184 of Builders' separate statement quote language from the assignment provision contained in these deeds of trust.

**D.     Real Party In Interest Requirement**

Objector's flawed analysis of the assignment provisions undermines its application of the "real party in interest" requirement contained in section 367.  In addition, its conclusion plaintiffs are not a "real party in interest" fails to address the other interests retained by the homeowners besides the right to bring legal action.  The Miscellaneous Proceeds were not transferred to the lenders free and clear of any restrictions.  Instead, the deeds of trust imposed restrictions on how the lenders could apply the proceeds, and those restrictions provided the borrowers with a significant benefit.  Specifically, the proceeds must be applied to repair the property or reduce the debt owed by the borrowers.  Either application would benefit the borrower.

Because plaintiffs (1) retained the right to pursue claims for property damage in legal proceedings and (2) held rights that limited how the lenders used any proceeds generated by any litigation, we conclude the borrowers were real parties in interest and, thus, had standing to pursue the claims for defective construction.

**E.     Improper Purpose**

*1.     Question of Fact*

The trial court determined Objector filed the motion for summary adjudication for an improper purpose—specifically, "the purpose of delay and harassment."  Pursuant to subdivision (b)(1) of section 128.7, attorneys may be sanctioned for presenting a motion or pleading "primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

Whether attorneys have presented a pleading or motion primarily for an improper purpose is a question that requires the trial court to inquire into the attorneys' subjective intent.  (See *Paulus v. Bob Lynch Ford*, *Inc.* (2006) 139 Cal.App.4th 659, 675 [subjective intent of defendant is addressed by malice element of malicious prosecution cause of

16.

action].)[10]  The inquiry into a person's motivation or subjective state of mind presents trial courts with a question of fact that is rarely susceptible to direct proof and, thus, usually involves an examination of the totality of the circumstances and drawing inferences from those circumstances.  (*Ibid*.; *People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 560, fn. 9.)

Applying the foregoing principles to the present case, we will consider whether the trial court's finding that the motion for summary adjudication was presented for an improper purpose is supported by substantial evidence.

### 2. *Substantial Evidence*

Initially, we note Objector's appellate briefing does not acknowledge the trial court's determination of an improper purpose was a finding of fact reviewed under the substantial evidence standard.  Consequently, its appellate briefing does not address the inferences that can be drawn from the evidence relating to its state of mind.

Nevertheless, Objector has argued the motion for summary adjudication was not brought for the purpose of delay and harassment.  Accordingly, we will address these arguments.

First, Objector argues the apparent purpose of the evidence regarding the denial of its other two motions "was to show that Builders (and its attorneys) should have known that its own motion for summary adjudication would also be denied and, therefore, filing the motion was an *ipso facto* violation of … section 128.7."

Second, it argues that "[r]ulings issued in unrelated lawsuits with different parties were not relevant to the motion for sanctions because a written trial court ruling cannot be cited as precedent."  Objector emphasizes the lack of precedential value of the orders

---

[10]The malice element can be shown by ill will, hostility or "where the prior suit was 'instituted primarily for an improper purpose.' [Citations.]" (*Paulus v. Bob Lynch Ford*, *Inc.*, *supra*, 139 Cal.App.4th at p. 675.)  The phrase "primarily for an improper purpose" also appears in the text of section 128.7, subdivision (b)(1).  Consequently, the malicious prosecution cases that discuss improper purpose provide a useful comparison for cases involving a motion for sanctions under section 128.7, subdivision (b)(1).

in question by observing that denials of motions for summary adjudication are not appealable.

The ipso facto[11] and relevancy arguments are off point. The prior rulings were not submitted to establish a fact that, by itself, would require the imposition of sanctions. Instead, the rulings were presented as evidence of the state of mind of Objector's attorneys. In particular, the rulings showed that, when the attorneys refused to withdraw their motion, they knew similar motions had been denied by the Fresno Superior Court. We conclude this evidence about the attorneys' knowledge was relevant to the court's inquiry into their subjective state of mind. (See Evid. Code, § 210 [definition of relevant evidence].)

Objector also argues (1) Builders had a right to bring its own motion even though motions brought on behalf of another entity had been denied and (2) the trial court improperly viewed Builders' first and only motion as an attempt to get the court to reconsider earlier rulings. This argument's focus on Builders is misplaced because the party sanctioned was Objector, not Builders. Therefore, it is the attorneys' purpose that is in question. Objector has presented no authority for the proposition that section 128.7 allows attorneys to pursue a motion for an improper purpose simply because the client they are representing has not previously had the position rejected for lack of merit. Furthermore, such a statutory exception cannot be created by implication because it would be contrary to the primary purpose of section 128.7—the deterrence of filing abuses. (*Optimal Markets*, *Inc. v. Salant* (2013) 221 Cal.App.4th 912, 920 [primary purpose of § 128.7 is deterrence, not compensation of party harmed].) The goal of deterrence would be undermined significantly if law firms are allowed to pursue the same meritless motion for a series of clients.

---

[11]Black's Law Dictionary (9th ed. 2009) page 905 states that ipso facto is Latin for "by the fact itself."

Finally, assuming for the sake of argument Objector challenges the sufficiency of the evidence for the finding of improper purpose, we conclude the record adequately supports the trial court's inference that Objector presented the motion for the improper purpose of delay and harassment. First, Objector knew similar motions had been denied in other cases. Second, its interpretation of the assignment provision in 52 of the 57 deeds of trust (i.e., over 91 percent) included in the motion was objectively unreasonable. These facts support the inference Objector presented the motion for the improper purpose of delay and harassment. (See *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441 [attorney cannot cling tenaciously to position and bury head in the sand].) Accordingly, the trial court's award of sanctions under section 128.7 does not amount to a manifest miscarriage of justice that requires reversal. (*Peake*, at p. 441.)

## F.      Builders' Standing to Challenge Plaintiffs' Standing

One of the issues contested below was whether Builders itself had standing to assert plaintiffs' lack of standing to sue as a defense to Developer's cross-complaint. Among other things, plaintiffs argued this position was untenable because Builders was not a party to the deeds of trust containing the assignment provision and, therefore, Builders lacked standing to "enforce" the assignment provision that purportedly transferred plaintiffs' right to sue for property damage to their homes.

Builders' potential lack of standing is an issue that presents an alternate ground for affirming the trial court's decision to impose sanctions.[12] Because the trial court's finding that the motion was presented for an improper purpose is supported adequately by Objector's unreasonable analysis of the assignment provision in 52 of the 57 deeds of trust, we do not address this alternate ground.

---

[12]A question involving standing and assignments currently is pending before the California Supreme Court. (See *Yvanova v. New Century Mortgage Corp.*, review granted Aug. 27, 2014, S218973 [issue: does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void].)

19.

## DISPOSITION

The order imposing sanctions against Objector in the amount of $2,250 is affirmed.  Plaintiffs shall recover their costs on appeal.

_____

PEÑA, J.

WE CONCUR:


_____

KANE, Acting P.J.


_____

DETJEN, J.

20.